

FILED

Feb 28 2018, 10:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Michael G. Moore<br>Indianapolis, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Michael Gene Worden<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Hopson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 28, 2018<br><br>Court of Appeals Case No.<br>49A05-1709-CR-2100<br><br>Appeal from the Marion Superior<br>Court – Criminal Division 17<br><br>The Honorable Christina<br>Klineman, Judge<br><br>Trial Court Cause No.<br>49G17-1705-F6-17459 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Joshua Hopson appeals his conviction for resisting law enforcement by flight causing injury. He concedes that he fled and that the police officer who chased him slipped in a patch of mud and injured his knee, but he argues that the State

failed to prove that he proximately caused the injury—in other words, that the injury was foreseeable. We disagree with Hopson and affirm his conviction.

## Facts and Procedural History

On May 11, 2017, a man called Indianapolis police to report that his daughter was trapped in an SUV by her boyfriend, later identified as Hopson, who was possibly armed with a brick. Indianapolis Metropolitan Police Department Officer Craig Solomon was dispatched to the scene. En route, Officer Solomon was told that the boyfriend's name was Joshua. Upon arriving, Officer Solomon saw Hopson, who matched the description he had been given, standing next to an SUV and speaking to a woman inside. As Officer Solomon got out of his vehicle, Hopson turned and began to walk away. Officer Solomon told Hopson to return, and he did. When Officer Solomon asked Hopson for his name and date of birth, Hopson said that his name was Noah Drake but that he didn't know his birthdate. Suspicious, Officer Solomon attempted to handcuff Hopson, but Hopson broke away and ran. Officer Solomon told Hopson to stop and chased after him on foot.

Officer Solomon initially caught up with Hopson and tried to place him under arrest, but Hopson again resisted, including punching Officer Solomon's shoulder. Hopson once again ran off. Eventually, he "slipped and fell on some mud at the mouth of an alley," but "he was able to get up and resume running." Tr. p. 21. Officer Solomon, who was still chasing Hopson, "fell in that same patch of mud" and struck his knee "quite hard," making it more difficult for

him to run.  *Id*.  Hopson was able to elude Officer Solomon, but he was later located by other officers and taken into custody.

[4]     The State charged Hopson with battery of a public-safety official, resisting law enforcement by flight causing injury, and resisting law enforcement by force.  After a bench trial, the trial court found Hopson guilty as charged and sentenced him accordingly.

[5]     Hopson now appeals.

# Discussion and Decision

[6]     Hopson challenges only his conviction for resisting law enforcement by flight causing injury.  Indiana Code section 35-44.1-3-1(a)(3) provides that a person who knowingly or intentionally "flees from a law enforcement officer after the officer has . . . identified himself or herself and ordered the person to stop" commits resisting law enforcement, a Class A misdemeanor.  The offense is elevated to a Level 6 felony if the person, while committing the offense, "inflicts bodily injury on or otherwise causes bodily injury to another person[.]"  *Id*. at (b)(1)(B).  Hopson concedes that he illegally fled from Officer Solomon and that Officer Solomon injured his knee during the chase, but he asserts that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he **caused** Officer Solomon's injury.  He contends that the conviction should be reduced to a Class A misdemeanor.  We disagree.

[7]     In reviewing the sufficiency of the evidence supporting a conviction, we consider only the probative evidence and reasonable inferences supporting the judgment. *Wilson v. State*, 39 N.E.3d 705, 716 (Ind. Ct. App. 2015), *trans. denied*. We do not reweigh the evidence or assess witness credibility. *Id*. We consider conflicting evidence most favorably to the judgment. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id*. The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id*.

[8]     For a defendant to be convicted of the causing-injury enhancement, the State must prove that the defendant's conduct was a proximate cause of the injury, i.e., that the injury was a foreseeable result of the defendant's conduct. *Moore v. State*, 49 N.E.3d 1095, 1107-08 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*. Here, Officer Solomon's injury was most certainly a foreseeable result of Hopson's flight. Whenever a suspect flees from a police officer, it is foreseeable that the officer will pursue the suspect. In turn, whenever an officer is placed in a position of having to chase a fleeing suspect, it is generally foreseeable that the officer will suffer an injury in the heat of the pursuit, such as by falling, tearing a muscle, or turning an ankle.

[9]     Of course, a pursuing officer's injury could be the result of some unforeseeable, intervening cause, in which case the fleeing suspect will not be held responsible for the injury. *See id*. But there was no such intervening cause in this case. It

was entirely foreseeable to Hopson that Officer Solomon would slip on a mud patch in the alley Hopson ran through. This is particularly true in light of the fact that Hopson himself had slipped and fallen on the mud patch. When he got up and continued running, he was aware of not only the likelihood that Officer Solomon would continue to chase him but also of the very distinct possibility that Officer Solomon would run through, and fall in, the same spot.

[10] Hopson contends that this case is comparable to *Moore*, where we reversed a causing-injury enhancement after concluding that the State had failed to prove that the defendant's act of fleeing was the proximate cause of a pursuing officer's injury. In that case, however, all we knew is that the officer "fell down as he ran and suffered a partially-torn tendon in his left shoulder." *Id*. at 1099. The "actual cause" of the officer's fall was "not clear from the record." *Id*. at 1108. For all we knew, there was an unforeseeable, intervening cause. Here, on the other hand, we know exactly how Officer Solomon was injured: he fell in the exact same mud patch that Hopson had fallen on moments earlier. This evidence is sufficient to support the conclusion that Hopson's conduct was a proximate cause of Officer Solomon's injury.

[11] Affirmed.

May, J., and Altice, J., concur.