

# IN THE

# Court of Appeals of Indiana

David L. Searcy,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Mar 30 2026, 10:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 30, 2026

Court of Appeals Case No.
25A-CR-298

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause No.
59C01-2411-F5-659

**Opinion by Judge Weissmann**
Judges Bradford and DeBoer concur.

**Weissmann, Judge.**

After David Searcy was accused by a child relative of molestation, police conducted a forensic examination of Searcy's cell phones. The examination of a non-functioning Samsung phone found in Searcy's basement revealed 263 child pornographic images, including 10 depicting toddlers or preschoolers in sexual poses that first appeared on the phone over an 11-month period beginning in January 2014. Searcy was charged with and convicted of 10 counts of possessing child pornography and sentenced to the maximum aggregate term of 60 years imprisonment. Searcy appeals, challenging both his convictions and his sentence on various grounds. We affirm.

## Facts

In September 2024, a child relative of Searcy's reported that Searcy had sexually abused her over several years. She alleged that Searcy sometimes recorded the abuse on a silver and black Android cell phone that was not his primary phone. Based on this information, police obtained a warrant to search Searcy's residence for that specific phone.

While executing the warrant, officers recovered an inoperable Samsung phone bearing white or silver "AT&T" lettering from Searcy's basement. They also seized five other cell phones from the residence and later obtained a separate warrant authorizing a forensic search of the phones' contents.

A digital forensic examiner with the Indiana State Police conducted the examination of the Samsung phone. Because the device itself was not

functioning, the forensic examiner removed the phone's memory chip and used specialized digital forensic extraction software—used by law enforcement and not available to the public—to access and analyze the data stored on the device. The examination showed that the phone number associated with the device was registered to Searcy, and Searcy acknowledged the phone was his. The examiner was only able to recover activity on the phone for the period of September 8 to December 7, 2014.

[5] The examiner recovered 253 child pornographic images, including 10 from the phone's memory cache that ultimately formed the basis of the criminal charges against Searcy. The images depicted children who appeared to be well under twelve years old—toddlers or preschoolers. The software showed that each of the 10 images first appeared on the phone on unique dates from January 10 through December 1, 2014.

[6] The forensic extraction also revealed a troubling internet search history on the Samsung phone. The "web history title … included preteen models, young girls six (6) to sixteen (16) years old, young heaven and sexy, girls virgins teen gallery, school girls, [and] sexy virgins." Tr. Vol. II, p. 132.

[7] The Samsung phone's activity also reflected text-message communications sent from the device to Searcy's son about his book bag and to Searcy's co-worker seeking a ride. The examiner testified that a text message stating "Love u baby good night" was sent via the phone to an occasional girlfriend of Searcy's approximately three hours before one of the child pornographic images was

created on December 1, 2014. Exh. 18. Later that day, a message stating "I miss u already" was sent via that phone to another woman. *Id.*

[8] A forensic examination of Searcy's current phone also yielded searches for images on websites with titles referring to sexual acts performed by teen girls. These searches, conducted in late 2022, were for videos featuring "petite," "tiny," and "extra small" teens, "young Indian school girl," and "little Russian teen." Exh. 19.

[9] The State charged Searcy with 10 counts of Level 5 felony possession of child pornography. After a two-day trial, the jury found Searcy guilty on all 10 counts. The trial court sentenced him to the maximum 6 years on each count, all to run consecutively, for an aggregate sentence of 60 years. The court based this sentence partly on Searcy's criminal history and the particularly young age of the victims depicted in the images—children whom the court described as appearing to be "toddlers" and "babies" as young as three or four years old. Tr. Vol. III, pp. 147-48. Searcy appeals both his convictions and sentence.

## Discussion and Decision

[10] Searcy raises four issues on appeal. First, he argues that the Samsung phone was illegally seized because it did not match the search warrant's description of a "silver and black" Android device. Second, he contends the State failed to prove he knowingly possessed the images with intent to view them because multiple household members used the phone, the phone was broken at the time of his arrest, and the images were not accessible without advanced forensic

software. Third, he asserts that the trial court improperly admitted prejudicial and allegedly irrelevant evidence of his internet searches for pornography depicting teen girls. Finally, Searcy challenges his 60-year sentence, claiming it exceeds the statutory sentencing cap for a single episode of criminal conduct and is inappropriate under Indiana Appellate Rule 7(B) in light of the nature of the offenses and Searcy's character.

[11] We find no error in the seizure of the phone or the admission of the internet searches. We also conclude the evidence was sufficient to prove Searcy's possession of the pornographic images. As to Searcy's sentence, we conclude that the trial court properly found that the 10 offenses, each of which was separately added to the phone on a different date, did not constitute a single episode of criminal conduct for which consecutive sentencing was capped. Finally, we find unpersuasive Searcy's claim that his sentence is inappropriate in light of the nature of the offenses and Searcy's character.

## I. Sufficiency of the Evidence

[12] Possession of child pornography is committed when:

> A person who, with intent to view the image, knowingly or intentionally possesses or accesses an image that depicts or describes sexual conduct:
>
>> (1) by a child who the person knows is less than eighteen (18) years of age [or]
>>
>> (2) by a child less than eighteen (18) years of age, or by a person who appears to be a child less than eighteen (18) years of age, if the representation of the image is obscene (as described in IC 35-49-2-10); or

(3) that is simulated sexual conduct involving a representation that appears to be a child less than eighteen (18) years of age, if the representation of the image is obscene (as described in IC 35-49-2-1)[.]

Ind. Code § 35-42-4-4(d) (2022). The offense is a Level 5 felony "if the sexual conduct, matter, performance, or incident depicts or describes a child who the person knows is less than eighteen (18) years of age, or who appears to be less than eighteen (18) years of age, who . . . is less than twelve (12) years of age[.]" Ind. Code § 35-42-4-4(e)(1)(F) (2022).

[13] Searcy does not dispute that the images recovered from the Samsung phone constitute child pornography. Instead, he claims the State failed to prove two other elements of possession of child pornography: (1) that he "knowingly" possessed the images; and (2) that he possessed the images with the intent to view them. Ind. Code § 35-42-4-4(d) (2022).

[14] When reviewing the sufficiency of the evidence, we consider only the evidence most favorable to the verdict and all related reasonable inferences without reweighing the evidence or reassessing witness credibility. *Farral v. State*, 263 N.E.3d 794, 797 (Ind. Ct. App. 2025). "We will affirm the conviction 'unless no reasonable [factfinder] could find the elements of the crime proven beyond a reasonable doubt.'" *Id.* (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). The State may rely entirely on circumstantial evidence, and "[t]he evidence need not 'overcome every reasonable hypothesis of innocence.'" *Id.*

(quoting *Drane*, 867 N.E.2d at 146). We conclude that the evidence was sufficient to support Searcy's 10 convictions.

## A. Evidence of Knowing Possession

Searcy argues the evidence was insufficient to prove he knowingly possessed the 10 images. First, he contends he could not knowingly possess the images within the timeframe charged because the Samsung phone was inoperable when police seized it. That argument turns on an unduly narrow conception of possession.

"A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Possession may be either actual or constructive. *Albrecht v. State*, 185 N.E.3d at 412, 422 (Ind. Ct. App. 2022). Actual possession occurs when a defendant has "direct physical control over an item." *Id.* Constructive possession occurs when the defendant had both the "capability" and "intent to maintain dominion and control over the item" even if it was not on the defendant's person. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).

To show capability to maintain dominion and control over contraband, "the State must prove that the defendant is able to reduce the contraband to the defendant's personal possession." *Holmes v. State*, 785 N.E.2d 658, 661 (Ind. Ct. App. 2003). "A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item." *Gray*, 957 N.E.2d at 174.

As to "intent," "[a] trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item." *Id.* "When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item." *Id.* at 174-75. These circumstances include: (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; and (3) the mingling of contraband with other items the defendant owns. *Id.* at 175. Thus, the requirement of "intent to maintain dominion and control over contraband" does not demand that the contraband be readily accessible or usable at every moment, as Searcy's argument implies.

Here, the evidence permitted the jury to find that, during the relevant period, Searcy retained both the capability and intent to maintain dominion and control over the Samsung phone and the images it contained. The device was kept in his home, and there was no evidence that he had relinquished ownership of it. He readily knew its location, as he directed police to it during their execution of the warrant. Although the Samsung phone was not operational when police seized it, the images remained stored on the device. From those facts, the jury could reasonably conclude that Searcy continued to possess the images by retaining control over the medium that contained them, even if the images could only be accessed later through forensic tools.

[20] Searcy's argument would effectively limit possession to situations in which contraband is immediately usable or viewable. He cites no authority to support such a requirement. If that were the law, a defendant could conceivably avoid criminal responsibility for possessing child pornographic images on his phone simply by deleting the images or removing the battery from the phone.

[21] Possession is, by its nature, an ongoing endeavor that begins when the defendant first takes control over the contraband and normally ends when that control ceases. *Edwards v. State*, 147 N.E.3d 1019, 1024 (Ind. Ct. App. 2020) (ruling that possession is inherently a continuing offense). Thus, the jury was entitled to conclude that Searcy's continued dominion and control over the device on which the images were stored constituted possession, notwithstanding the phone's inoperability at the time of seizure.

[22] In a related argument, Searcy also contends the evidence of his knowing possession was inadequate because: (1) the forensic examiner could not rule out that someone else—either someone in the home or a prior owner of the phone—could have downloaded the images without Searcy's knowledge; and (2) at the time of Searcy's arrest, the photos could only be accessed through forensic software, meaning that he might not have seen the images on the Samsung phone if someone else had downloaded them and deleted them. The forensic examiner testified that he could not determine who had accessed the 10 images on the phone.

[23] But the State was not required to disprove every possibility that someone else could have used the phone or downloaded the images without Searcy's knowledge. *See Glenn v. State*, 999 N.E.2d 859, 861 (Ind. Ct. App. 2013) ("The evidence need not overcome every inference of innocence."). The jury was entitled to weigh any potentially exculpatory evidence against the substantial inculpatory evidence and reject Searcy's claim that someone else downloaded the images.

[24] The inculpatory evidence linked the phone to Searcy and connected his use of the phone to the timeframes when the images first appeared on the phone. Searcy acknowledged the phone was his, and the forensic examiner testified that the phone number associated with the device was registered to Searcy. The State's evidence also showed that 9 of the 10 images had once appeared in the photo gallery of the phone.

[25] Although the forensic examiner's software retrieved only "user activity" for the period of September 8 through December 7, 2014, this did not mean the phone was only in use during that period. The examiner testified that the lack of available user activity outside that period could have been due to the forensic software's limitations or due to deletions of information from the phone.

[26] Searcy testified he bought the phone at a flea market while he was living at an address in Paoli. He also testified that he lived at that address from either 2012 or 2013 through the end of 2014. Searcy bought the phone in "late summer . . . August, September, somewhere in there," but he never testified as to the

specific year of purchase. Tr. Vol. III, p. 23. The jury could infer from that evidence that Searcy owned the phone throughout 2014—the year during which all 10 images were created on the phone. The evidence also showed that 9 of the 10 images had once appeared in the photo gallery of the Samsung phone, suggesting that whoever used the phone would have been able to see them before they were moved to the photo gallery cache.

[27] The evidence also showed that 1 of the 10 images first appeared on the phone and was accessed by someone on December 1, 2014. This was during the period when Searcy admittedly was using the phone. Additionally, outgoing text messages were sent from the Samsung phone within hours of the creation of the image on December 1, 2014. Some of those messages were sent to Searcy's co-worker, Searcy's adult son, and a onetime girlfriend of Searcy's. From this evidence, the jury could reasonably infer that Searcy was using the phone at the time that the image was created and saved.

[28] The State also introduced evidence of the phone's internet search history during that same period, including searches for sexually explicit material likely involving minors. That history coincided with the contemporaneous text-message activity reflected in the phone's timeline. The jury could reasonably infer that the same user who sent those messages also conducted the searches and possessed the 10 images.

[29] Viewed in the light most favorable to the verdict, the evidence supports the jury's conclusion that Searcy knowingly possessed the images. *See Cutshall v.*

*State*, 160 N.E.3d 247, 253-54 (Ind. Ct. App. 2020) (finding evidence of knowing possession sufficient based on circumstantial evidence showing defendant downloaded the pornographic images on a shared cell phone).

## B. Intent to View

Searcy also claims the State presented no evidence that he possessed any child pornography with the intent to view it. He again focuses on the inoperability of the phone at the time of seizure, but the mere fact that the images could not be easily viewed at the time of seizure does not establish that Searcy never intended to view them or that he never actually viewed them.

As previously noted, all but one of the images were recovered from the photo gallery cache of the phone, meaning that they once had been located in the phone's photo gallery. Moreover, Searcy retained the phone for many years after the images were created. Finally, as previously noted, the evidence showed that internet searches for child sexual images were made on the broken phone during the relevant periods and also on the phone that Searcy was using nearly a decade later. The jury could infer from this evidence that Searcy possessed the images on the Samsung phone with the intent to view them.

## II. Evidence of Internet Searches

Searcy next argues that the trial court abused its discretion by admitting evidence of internet searches for teen and preteen pornography that were recovered from his phones. He contends the searches were insufficiently connected to the charged images and, even if relevant, were unfairly prejudicial.

[33] "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Ind. Evidence R. 404(b)(1). However, such evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2).

[34] But even if permitted by Evidence Rule 404, evidence may be excluded under Evidence Rule 403, which allows exclusion of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury[.]" Evid. R. 403. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Evid. R. 401.

[35] We review a trial court's admission of evidence under these and other evidentiary rules for an abuse of discretion. *See Fry v. State*, 25 N.E.3d 237, 248 (Ind. Ct. App. 2015). A trial court abuses its discretion if its ruling is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[36] Here, the challenged evidence was relevant. The State was required to prove that Searcy knowingly possessed the 10 images with intent to view them. *See* Ind. Code § 35-42-4-4(d). The internet search history from both the Samsung phone and the phone that Searcy was using at the time of his arrest reflected searches for sexually explicit material involving minors during the same period

in which most of the 10 child pornographic images were stored on the Samsung phone. This evidence had a tendency to make it more probable that Searcy knowingly possessed, with intent to view, the 10 images on the Samsung phone. The trial court acted within its discretion in concluding that the searches were probative of Searcy's knowledge and intent.

[37] Nor did the trial court abuse its discretion in declining to exclude the internet search evidence under Evidence Rule 403. Although the evidence was prejudicial, the trial court could reasonably conclude that its probative value was not substantially outweighed by the danger of unfair prejudice. The searches were offered to determine who downloaded the charged images and to rebut Searcy's claims that he lacked knowledge of their presence on the Samsung phone and that he had no interest in child pornography.

[38] Searcy emphasizes that the searches were for pornographic images of children somewhat older than those depicted in the 10 charged items. But the State was not required to show an exact match between those internet searches and the images. *See Laird v. State*, 103 N.E.3d 1171, 1178 (Ind. Ct. App. 2018) (ruling that evidence of internet search history is admissible under the "plan" exception of Rule 404(b)(2) when the searches are "close in time" to the defendant's commission of the offense and when the internet search history is "very similar" to a defendant's charged acts).

[39] The internet searches sought the same sorts of images reflected in the 10 images—sexualized depictions of children—during the period when Searcy

allegedly possessed the 10 images (2014-2022). The trial court could reasonably determine that the searches were sufficiently related to the charged conduct to assist the jury in evaluating Searcy's knowledge, intent, and plan. *See id.* Under these circumstances, the trial court did not abuse its discretion in admitting the internet search evidence.

## III.  Admission of Evidence from the Samsung Phone

[40]     Searcy next argues the trial court erred by admitting evidence obtained from the Samsung phone seized by police pursuant to the search warrant. He contends the phone did not match the warrant's description of a "silver and black" Android device. He asserts that officers therefore violated the Fourth Amendment to the United States Constitution by exceeding the scope of the warrant.

[41]     The Fourth Amendment requires that a warrant particularly describe the items to be seized. U.S. Const. amend IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *Lundquist v. State*, 179 N.E.3d 1051, 1055 (Ind. Ct. App. 2021). Although evidentiary decisions are generally reviewed for an abuse of discretion, whether the admission of evidence seized during a search violates the Fourth Amendment is a question of law we review de novo. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015).

[42] The Constitution does not demand technical precision in the execution of a warrant. *Dost v. State*, 812 N.E.2d 232, 237 (Ind. Ct. App. 2004) (concluding that with respect to the particularity requirement of the Fourth Amendment, "[t]he test is for practical accuracy, and common sense should prevail over hypertechnicality") (quoting *State v. Dye*, 826 P.2d 500, 506 (Kan. 1992)). Officers may exercise reasonable judgment when identifying items described in a warrant, especially when the description concerns common objects that may vary in appearance. *See Robinson v. State*, 5 N.E.3d 362, 366 (Ind. 2014).

[43] Here, the warrant authorized officers to search for and seize a non-primary Android phone associated with Searcy's alleged sexual misconduct with a child relative. Under the circumstances, the trial court could reasonably conclude that the Samsung phone seized fell within the scope of the warrant.

[44] The device was an older Android phone, distinct from Searcy's primary phone, and was located where Searcy directed officers to look. That the phone was predominantly black did not render its seizure unreasonable. After all, the phone also included silver or white lettering and, thus, either matched or very nearly matched the warrant's description of a "silver and black" phone. That the silver appeared on lettering, rather than as a primary color of the phone, does not render the description inaccurate for purposes of the Fourth Amendment. *See Lundquist*, 179 N.E.3d at 1056 ("Indiana courts have concluded that there is no Fourth Amendment violation so long as warrants adequately and accurately described the physical characteristics of the

properties to be searched, even where the physical descriptions contained some errors[.]"); *Dost*, 812 N.E.2d at 237 (finding inexact description of home to be searched did not invalidate the warrant under the Fourth Amendment).

[45] Because officers acted within the scope of the warrant, the admission of the evidence did not violate the Fourth Amendment. The trial court therefore did not abuse its discretion by admitting evidence obtained from the phone at trial.

## IV. Consecutive Sentencing

[46] Searcy argues that the trial court violated the statutory sentencing cap in Indiana Code § 35-50-1-2 (Consecutive Sentencing Statute) by imposing fully consecutive maximum sentences totaling 60 years imprisonment. He asserts that all 10 offenses for which he was convicted were part of a single episode of criminal conduct under the Consecutive Sentencing Statute, which, in his view, capped his aggregate sentence at 7 years imprisonment. We conclude the evidence supports the trial court's finding that the 10 offenses did not constitute an episode of criminal conduct.

[47] A trial court generally has discretion to determine whether to impose consecutive or concurrent terms of imprisonment. *Albrecht*, 185 N.E.3d at 425. The Consecutive Sentencing Statute "limits that discretion, however, 'and the trial court's discretion does not extend beyond the statutory limits.'" *Id.* (quoting *S.B. v. State,* 175 N.E.3d 1199, 1202-03 (Ind. Ct. App. 2021)). This is because our legislature is responsible for fixing criminal penalties. *Fix v. State*, 186 N.E.3d 1134, 1143 (Ind. 2022). "Therefore, in reviewing a sentence, we

will consider whether it was statutorily authorized." *Edwards*, 147 N.E.3d at 1021.

[48] At the time that Searcy was charged, the Consecutive Sentencing Statute specified, in pertinent part:

> (c) Except as provided in subsection (e) or (f)[,] the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. . . . [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of [certain recidivist enhancements] to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the period described in subsection (d).
>
> (d) Except as provided in subsection (c), the total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed the following: . . .
>
>> (2) If the most serious crime for which the defendant is sentenced is a Level 5 felony, the total of the consecutive terms of imprisonment may not exceed seven (7) years.

Ind. Code § 35-50-1-2 (2020).

[49] On each of Searcy's 10 convictions for Level 5 felony possession of child pornography, the trial court imposed the maximum sentence of 6 years imprisonment. The court then ordered each of the 6-year sentences to be served consecutively for an aggregate sentence of 60 years imprisonment.

[50] As provided by Indiana Code § 35-50-1-2(c) (2020), "crimes of violence" are automatically excluded from the Consecutive Sentencing Statute's sentencing restrictions. The version of the Statute applicable here defines a "crime of violence" as one of 21 specified crimes, including child molesting and child exploitation. Ind. Code § 35-50-1-2(a). But possession of child pornography is not among them. Searcy's convictions therefore are not automatically excluded from the Statute's restrictions. The restrictions, however, may apply if Searcy's offenses qualify as an "episode of criminal conduct" under Indiana Code § 35-50-1-2(c)-(d) (2020).

[51] In this context, "episode of criminal conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b) (2020). "'Whether certain offenses constitute a 'single episode of criminal conduct' is a fact-intensive inquiry' determined by the trial court." *Fix*, 186 N.E.3d at 1143 (quoting *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002)). "While 'the ability to recount each charge without referring to the other' offers 'guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct,' we focus our analysis on 'the timing of the offenses' and 'the simultaneous and contemporaneous nature of the crimes,' if any." *Id.* at 1144 (quoting *Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006)).

[52] As to each count of possessing child pornography, the charging information, in pertinent part, alleged that "on or about December 20, 2022, David L. Searcy,

with intent to view the image, did knowingly or intentionally possess or access an image that depicted or described sexual conduct by a child. . . ." Appellant's App. Vol. II, pp. 201-04. The State presented evidence at trial showing the separate dates on which each of the 10 child pornographic images that Searcy was charged with possessing "came to exist on the [phone]." Tr. Vol. II, p. 140; State's Exhibit 6(a). These dates were:

| Date of Creation | Image Number | Access or Modification Date[1] |
|---|---|---|
| January 10, 2014 | 5 | None |
| January 31, 2014 | 3 | None |
| February 15, 2014 | 2 | None |
| July 14, 2014 | 10 | None |
| July 20, 2014 | 7 | None |
| August 18, 2014 | 9 | None |
| August 22, 2014 | 8 | None |
| August 23, 2014 | 6 | None |
| August 24, 2014 | 4 | None |
| December 1, 2014 | 1 | December 1, 2014 |

[1] The "Access or Modification Date" is the date on which the forensic software detected someone either viewing the image or modifying it in some way.

Searcy claims that his offenses were an episode of criminal conduct under the Consecutive Sentencing Statute based on *Edwards v. State*, 147 N.E.3d 1019 (Ind. Ct. App. 2020). *Edwards* involved a challenge to consecutive sentences entered on convictions for 10 separate counts of possession of child pornography as exceeding the Consecutive Sentencing Statute's 7-year cap. The *Edwards* Court ruled that the State, in arguing for consecutive sentences, bore the burden of showing that the defendant acquired some or all of the images separately. *Id.* at 1026. Because the record contained no such proof, the *Edwards* Court reversed based on the Consecutive Sentencing Statute and remanded for entry of the maximum 7-year term of imprisonment that the Statute specified. *Id.*.

Searcy argues that the State failed to establish his separate acquisition of the 10 images because the evidence of the images' creation dates was not reliable. He notes that all but one of the creation dates predate the user activity to which the forensic examiner testified—September 8 to December 7, 2014. But the user activity dates simply denoted the period during which the forensic examiner's software showed activity on the phone. The forensic examiner testified that the software might not have captured all activity that had occurred on the phone.

Searcy's own testimony established that he might have owned the phone as early as 2012—that is, before the creation dates of each of the 10 images. As previously noted, he moved to a home in Paoli in 2012 or 2013 and remained there throughout 2014. Searcy also testified that he bought the Samsung phone

at a flea market in the late summer—perhaps August or September—while he lived at the Paoli home. This evidence reasonably could be construed to support a finding that Searcy owned the phone beginning in September 2012 or 2013—long before the first of the 10 images was created on January 10, 2014.

[56] Searcy's claim that the creation date evidence is unreliable is simply a request to reweigh the evidence in a manner inconsistent with the jury's verdicts. The jury found that Searcy knowingly possessed the 10 images. These verdicts necessarily rested on the jury's determination that Searcy accessed those images on the Samsung phone even if the images were created outside the user activity detected by the forensic examiner's software.

[57] Searcy has not shown that the trial court abused its discretion by entering fully consecutive sentences for his possession of 10 different images created on 10 different dates over a one-year period. *Edwards*, 147 N.E.3d at 1025 ("Common sense dictates that the simultaneous, or near-simultaneous, acquisition of several of the [pornographic] images would most likely constitute a single episode of criminal conduct, while the acquisition of the same images separately over the course of several days, weeks, or months would most likely not."). The trial court could reasonably determine that the offenses did not constitute a single episode of criminal conduct; therefore, the Consecutive Sentencing Statute's cap did not apply. *Albrecht,* 185 N.E.3d at 425-26 (affirming a 21-year sentence on 10 counts of Level 5 felony possession of child pornography because the State presented evidence that the pornography was

acquired over the course of years); *cf. Edwards*, 147 N.E.3d at 1025-26 (reversing a 13½-year sentence for 10 counts of possession of child pornography when State failed to prove when the pornography was acquired).

## V. Appropriateness of Sentence

[58] Searcy's final claim is that his 60-year sentence is inappropriate under Indiana Appellate Rule 7(B). That Rule permits an appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B).

[59] Our principal role in reviewing the appropriateness of a sentence is to attempt to "'leaven the outliers'" and "not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)). We therefore give considerable deference to the trial court's sentencing decision, revising the judgment only when it is "overcome by compelling evidence portraying in a positive light the nature of the offense . . . and the defendant's character[.]" *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Searcy bears the burden of persuading this Court that his sentence is inappropriate. *Konkle v. State*, 253 N.E.3d 1068, 1092 (Ind. 2025).

[60] We conclude that Searcy's maximum, fully consecutive sentences are not inappropriate in light of the nature of the offense and the character of the offender, given the seriousness of Searcy's conduct and his poor character as reflected in his repeated crimes against children.

## A. Nature of the Offenses

[61] When assessing the nature of the offenses, we first consider the statutory range established for that class of offense. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. The sentencing range for a Level 5 felony is 1 to 6 years, with an advisory sentence of 3 years. Ind. Code § 35-50-2-6. The trial court sentenced Searcy to the maximum 6 years imprisonment on each of his 10 convictions and then ordered each sentence to be served consecutively to the next for an aggregate sentence of 60 years imprisonment.

[62] Noting that maximum sentences generally are reserved for the worst offenses, Searcy claims his maximum sentence is inappropriate because his offenses are not the worst Level 5 felony possessions of child pornography nor is he the worst offender. We are unpersuaded.

[63] Although Searcy was convicted of possessing child pornographic images of children appearing to be under 12 years old, the evidence showed the children likely were much younger—toddlers to approximately four years old. The images appear to depict acts of genital penetration, anal penetration, and oral sex. The images were so troubling that the trial court determined that possession of them reflects "a depraved mind" and "a threat to . . . our society." Tr. Vol. 147. "It is well-settled that '[c]onsecutive sentences reflect the significance of multiple victims.'" *See Hancz-Barron v. State*, 235 N.E.3d 1237, 1248 (Ind. 2024) (quoting *Pittman v. State*, 885 N.E.2d 1246, 1259 (Ind. 2008).

[64]    Searcy possessed these perverse images on a phone that he testified was used by numerous people either living in or visiting his home. All but one of the images either were in or had been in the photo gallery of the phone, which he testified was shared by his household. Thus, Searcy potentially exposed the pornographic images to others, including a number of children.

[65]    Searcy's possession of at least some of the images coincided with many internet searches on the phone for other pornographic images of children. Although Searcy was charged with possessing only 10 of the images, the evidence showed a total of 263 child pornographic images on his phone.

## B.  Searcy's Character

[66]    Searcy claims his criminal history is minimal and that he therefore is not among the worst offenders. But "[e]ven a minor criminal history is a poor reflection of a defendant's character." *Prince v. State*, 148 N.E.3d 1171, 1174 (Ind. Ct. App. 2020). The breadth of Searcy's criminal history is not as significant here as the type of crimes for which he either was convicted or charged. Nearly all involved alleged harm to children.

[67]    He was convicted of battery of a child less than 14 years old in 2012, although the record does not reveal whether that conviction was entered as a felony or a misdemeanor. He also was arrested for several offenses in Kentucky, including "flagrant nonsupport" of a child. Appellant's App. Vol. III, p. 101.

[68]    At the time of Searcy's sentencing in the present case, he had pending charges

in Indiana for possession of marijuana and three sex crime charges in which the alleged victim was a child victim related to Searcy. But after Searcy, who is 57 years old, received a sentence in the present case that effectively will require him to be incarcerated for the rest of his life, the State obtained dismissal of the other pending charges.

[69] This criminal history, while not the worst, is significant due to the number of contacts with the criminal justice system that Searcy has had for child-related offenses. In addition, the 10 images with which Searcy was charged were among 263 such images found on the Samsung phone. And after that phone became inoperable, he continued his search for illegal child pornographic images on the phone he possessed immediately before his arrest.

## C. No Inappropriate Sentence

[70] "[T]he central inquiry [in Rule 7(B) review] is not whether one sentence is *more* appropriate than another, but rather whether the sentence in the challenged case is *inappropriate*." *Jordan v. State*, 62 N.E.3d 401, 406-07 (Ind. Ct. App. 2016) (emphasis in original). Because "[s]entencing is fact-sensitive," "sentencing decisions often defy quantification[,]" making "principled appellate review and revision of sentences difficult." *Bluck v. State*, 716 N.E.2d 507, 515 (Ind. Ct. App. 1999).

[71] Ultimately, "[t]he 7(B) 'appropriateness' inquiry is a discretionary exercise of the appellate court's judgment, not unlike the trial court's discretionary sentencing determination." *Knapp,* 9 N.E.3d at 1291-92. Such appellate review

"ultimately boils down to the appellate court's collective sense of what is appropriate," with the "principal role," as previously noted, being "to attempt to leaven the outliers." *Wilson v. State*, 157 N.E.3d 1163, 1181 (Ind. 2020) (quoting *Brown v. State*,10 N.E.3d 1, 8 (Ind. 2014) and *Cardwell*, 895 N.E.2d at 1225)).

[72] Considering the nature of Searcy's offenses and his character, our collective sense is that his 60-year sentence is not an outlier that requires revision. His crimes are reprehensible, and the impact that child pornography has on its victims can be devastating. Although Searcy's criminal history is moderate, his contacts with the criminal justice system reflect a disturbing pattern of alleged or actual child victimization. The trial court imposed the maximum sentence partly to protect society from Searcy, for whom the trial court viewed reformation and rehabilitation as questionable. We conclude that Searcy's 60-year sentence is not inappropriate under Rule 7(B) in light of the nature of his offenses and his character.

## Conclusion

[73] As Searcy has failed to establish that he is entitled to reversal of his convictions, that consecutive sentences were improper, or that his sentence is not inappropriate under Rule 7(B), we affirm the trial court's judgment.

Bradford, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Fishers, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana